IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Leslie Ann Solomon, | ) | C/A No.: 1:14-231-BHH-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

I.      Relevant Background

        A.      Procedural History

        On February 14, 2011, Plaintiff filed applications for DIB and SSI in which she alleged her disability began on February 10, 2011. Tr. at 149–55, 170–76. Her

applications were denied initially and upon reconsideration. Tr. at 68–72, 78–79, 80–81. On July 5, 2012, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Augustus C. Martin. Tr. at 22–46 (Hr'g Tr.). The ALJ issued an unfavorable decision on August 14, 2012, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 7–16. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–3. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on January 27, 2014. [ECF No. 1].

B.    Plaintiff's Background and Medical History

1.    Background

Plaintiff was 43 years old at the time of the hearing. Tr. at 27. She completed an associate's degree in liberal arts. Tr. at 29. Her past relevant work ("PRW") was as a nursing assistant and a hospital administrator. Tr. at 29–30. She alleges she was unable to work for a closed period from February 3, 2011, to February 8, 2012.[1] Tr. at 27.

2.    Medical History

a.    Prior to Alleged Onset Date ("AOD")

On March 17, 2010, Plaintiff presented to John R. Freedy, M.D., for follow up regarding bipolar disorder. Tr. at 391. Plaintiff had normal orientation, mood, and affect.

---

[1] At the beginning of Plaintiff's hearing, her attorney acknowledged her return to work and requested a closed period of disability. *See* Tr. at 27. Plaintiff's alleged onset date was changed from February 10, 2011, in her applications to February 3, 2011, presumably based on her indication that her work at MUSC ended on February 3, 2011. *See* Tr. at 27, 149, 170, 296.

2

Tr. at 392. Dr. Freedy refilled Plaintiff's psychiatric medications and stressed the importance of her taking them as prescribed. Tr. at 391.

On April 5, 2010, Plaintiff underwent a comprehensive psychological evaluation as a prerequisite for bariatric surgery. Tr. at 389. Laura Campbell, Ph. D., assessed diagnostic impressions that included mood disorder, NOS and anxiety disorder, NOS. *Id.*

On June 29, 2010, Plaintiff reported to Dr. Freedy that she recently lost her job. Tr. at 383. Dr. Freedy noted that Plaintiff had a history of job conflict leading to her voluntarily leaving jobs or being fired. *Id.* Plaintiff indicated her mood to be dysthymic, irritable, and anxious. *Id.* Plaintiff sought to resume psychotherapy to address stress management and interpersonal skills, and Dr. Freedy refilled Plaintiff's medications and referred her to a University Family Medicine intern for help. Tr. at 383–84.

Plaintiff followed up with Dr. Freedy on September 9, 2010, and requested he write a letter to her insurance company, which had recently denied her request for medical approval of gastric bypass. Tr. at 381. Plaintiff indicated she had recently been promoted to a new position and felt anxious. *Id.* Dr. Freedy encouraged her to maintain a realistic attitude and to use coping strategies. *Id.* Dr. Freedy continued Plaintiff's prescriptions for Effexor XR 150 milligrams and Seroquel 100 milligrams and indicated he would write a letter to Plaintiff's insurer. Tr. at 382.

Plaintiff was admitted to the Medical University of South Carolina ("MUSC") in October 2010 for laparoscopic gastric bypass surgery. Tr. at 350.

Plaintiff presented for bariatric surgery follow up with T. Karl Byrne, M.D. ("Dr. Byrne"), on December 30, 2010. Tr. at 370–74. Dr. Byrne referred Plaintiff to the

behavioral medicine clinic for routine post-operative counseling. Tr. at 370. He indicated Plaintiff had no symptoms of depression of psychosocial impairment and described her as oriented to person, place, and time, with intact recent and remote memory, judgment and insight and normal mood and affect. Tr. at 373–74.

Plaintiff followed up with Dr. Freedy for hypertension, obesity, and depression on January 18, 2011. Tr. at 368. She indicated she was depressed and had substantial job-related stress. *Id.* Dr. Freedy encouraged her to look for another job if her work-related stress persisted at an unreasonable level. *Id.* Dr. Freedy observed Plaintiff's mood to be dysthymic and anxious. Tr. at 369.

### b.    During the Closed Period

On February 15, 2011, Plaintiff reported to Dr. Freedy that she had recently lost her job. Tr. at 366. She asked Dr. Freedy if she should pursue disability instead of continuing her pattern of losing or quitting jobs due to depression and anxiety. *Id.* Dr. Freedy observed Plaintiff to have depressed mood and psychomotor retardation and to be tearful at times. Tr. at 367. He increased Plaintiff's dosage of Effexor, continued her prescription for Seroquel, and referred her to a psychology intern. *Id.*

On March 9, 2011, Plaintiff reported to Dr. Freedy that the increased dose of Effexor had improved her mood somewhat. Tr. at 364. Plaintiff's mood was somewhat dysthymic, but Dr. Freedy noted no other abnormalities. Tr. at 365.

Plaintiff presented to University Family Medicine on March 25, 2011, complaining of a ganglion cyst on her left foot. Tr. at 362. Kristen B. Carr, M.D.,

4

provided reassurance to Plaintiff and instructed her that she would need a referral to an orthopedic surgeon for removal if the cyst became painful. Tr. at 363.

On March 31, 2011, Plaintiff participated in a group therapy session for individuals with a history of bariatric surgery. Tr. at 356. Plaintiff indicated she was exercising one to two days per week and engaging in activities with her children one to two days per week. *Id.* She reported changes in mood, stress/emotional eating, and social pressures. *Id.* Test results indicated depression and minimal anxiety. *Id.* A mental status examination was normal. Tr. at 356–57.

On April 5, 2011, Plaintiff presented to MUSC Orthopaedics complaining of a left foot cyst that appeared three to four weeks earlier. Tr. at 355. An x-ray of her left foot showed no bony abnormality, but evidence of a previous bunion correction. *Id.* Langdon A. Hartsock, M.D. ("Dr. Hartsock"), aspirated 1.5 milliliters of fluid from the cyst. *Id.*

State agency consultant Lisa Clausen, Ph. D. ("Dr. Clausen"), indicated in a psychiatric review technique on April 20, 2011, that Plaintiff was diagnosed with bipolar II disorder, but that it was not a severe impairment. Tr. at 495, 498. Dr. Clausen assessed Plaintiff to have no restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining, concentration, persistence, or pace, and no episodes of decompensation. Tr. at 505.

On May 4, 2011, Plaintiff reported to Dr. Freedy that her bipolar disorder was stable and that she was doing well on her current medications. Tr. at 518. Dr. Freedy observed Plaintiff to be oriented to person, place, and time and to have normal mood and

affect. Tr. at 519. He refilled her prescriptions for Effexor XR 225 milligrams and Seroquel 100 milligrams. *Id.*

On June 7, 2011, Plaintiff informed Dr. Hartsock that the ganglion cyst had returned soon after it was aspirated. Tr. at 557. She requested that it be surgically removed, and Dr. Hartsock scheduled an outpatient procedure. *Id.*

Plaintiff presented to Dr. Carr on July 11, 2011, complaining of pain radiating down her left leg from her hip. Tr. at 555. She requested a referral to psychiatry for her bipolar disorder. *Id.* Her husband indicated she was in a manic phase and had recently increased her drinking and spending and placed personal ads on Craigslist. *Id.* Plaintiff was oriented to person, place, and time; had intact memory, judgment, and insight; demonstrated normal mood and affect; and had no pressured speech or flight of ideas. Tr. at 556. Dr. Carr diagnosed sciatica, referred Plaintiff for psychiatric treatment, and encouraged her to follow up with Dr. Freedy. *Id.*

On July 29, 2011, Plaintiff followed up with Dr. Freedy to request her psychiatric medications be increased. Tr. at 552. She indicated difficulty sleeping, even after taking Seroquel. *Id.* She reported anger and increased symptoms of bipolar disorder. *Id.* Dr. Freedy described Plaintiff's psychiatric presentation as normal, but noted her mood was anxious. Tr. at 553.

On August 15, 2011, state agency consultant Holly Hadley, Psy. D., ("Dr. Hadley") indicated in a psychiatric review technique that Plaintiff's impairments included depression and anxiety. Tr. at 528, 531, 533. She assessed Plaintiff to have no restriction of activities of daily living, mild difficulties in maintaining social functioning, mild

difficulties in maintaining, concentration, persistence, or pace, and no episodes of decompensation. Tr. at 538.

Plaintiff presented to Tanya M. Ray, M.D. ("Dr. Ray"), at Charleston Mental Health ("CMH") for an initial clinical assessment on October 30, 2011. Tr. at 579. Treatment notes reflect that Plaintiff presented to the urgent care clinic over the weekend, reported being off medication for three months, and indicated she was unable to see Dr. Freedy because she no longer had insurance. *Id.* Plaintiff was described as polite and neatly groomed. *Id.* She was alert and oriented to person, place, time, and situation. *Id.* Dr. Ray indicated Plaintiff's thought process was linear and goal directed, but that her responses were guarded. *Id.* Plaintiff reported poor sleep, nightmares, low energy, little interest and motivation, poor concentration, isolation, irritability, auditory hallucinations, and increased appetite. *Id.* Plaintiff's husband reported that she experienced periods of mania with decreased need for sleep, racing thoughts, increased goal-directed activity and spending, and sexual activity outside her marriage. *Id.* Plaintiff reported vague suicidal ideations and violent impulses, but denied a history of suicide attempts. *Id.* She related a history of physical and emotional abuse during her childhood. *Id.* and admitted to drinking two bottles of wine per day. *Id.* Dr. Ray indicated Plaintiff's symptoms were consistent with bipolar disorder and post-traumatic stress disorder ("PTSD") and that she should be further evaluated for cluster C personality disorder. Tr. at 583.

Plaintiff presented to Summerville Family Practice on November 18, 2011, and reported that she had nightmares and insomnia, cleaned her house repeatedly, was aggressive toward her husband, had lost past job due to triggers of PTSD, and felt like

she had to be perfect and control everything. Tr. at 543. The provider restarted Plaintiff's prescriptions for Effexor and Seroquel. *Id.*

On November 21, 2011, Plaintiff presented to Ajay Sood, M.D. ("Dr. Sood"), at CMH for an initial/extended physician's medication assessment. Tr. at 592–93. Dr. Sood noted that Plaintiff had prescriptions for Seroquel and Effexor from the family practice and that the vocational rehabilitation office had agreed to pay for her medications. Tr. at 592. Plaintiff's mental status examination was normal. Tr. at 592–93. Dr. Sood diagnosed bipolar I disorder and post-traumatic stress disorder. Tr. at 593.

Plaintiff followed up with Michael M. Kassur, M.D. ("Dr. Kassur"), at CMH on December 19, 2011. Tr. at 590. She reported improvement with medication and stated all of her symptoms were under good control, her sleep was stable, and her functioning had improved. *Id.* She denied side effects from medication. *Id.* Dr. Kassur diagnosed bipolar I disorder and post-traumatic stress disorder, refilled Plaintiff's medications, and instructed her to follow up in six weeks. Tr. at 590–91.

On February 1, 2012, Plaintiff reported to Dr. Kassur that she did well as long as she was taking medication. Tr. at 588. She indicated no side effects from medications and stated her sleep and appetite were stable. *Id.* She denied alcohol use. *Id.* Dr. Kassur refilled Plaintiff's medications. Tr. at 588–89.

C.     The Administrative Proceedings

1.     The Administrative Hearing

At the hearing on July 5, 2012, Plaintiff testified she had no physical problems that affected her ability to work, but had problems with depression and concentration that

prevented her from working from February 3, 2011, to February 8, 2012. Tr. at 27. She indicated she experienced stress and feelings of worthlessness. *Id.*

Plaintiff testified she was diagnosed with bipolar disorder. Tr. at 36. She stated she was very energetic, easily agitated, anxious, irritable, and quick to react during manic phases. Tr. at 37. She testified she often spent too much money during manic phases and later felt guilty. *Id.* She indicated her manic phases could last for two weeks or for a month. *Id.* Plaintiff stated she had bouts of depression in which she did not want to eat, take phone calls, or interact with visitors. Tr. at 38. She indicated her bouts of depression sometimes lasted for months and her moods had a "rollercoaster effect." Tr. at 38. Plaintiff testified she was diagnosed with anxiety and was easily stressed by everyday activities. Tr. at 39.

Plaintiff testified she was fired from her job as a hospital administrator for insubordination in February 2011. Tr. at 27, 30. She stated the job was very demanding and stressful and she had difficulty comprehending and completing her job duties. Tr. at 30, 36. She explained she had difficulty communicating with her coworkers and supervisors. *Id.* Plaintiff indicated she worked through a temporary employment agency as a medical office assistant from June 2011 to August 2011.[2] Tr. at 28–29. Plaintiff testified she was terminated from the job because she missed days when she felt ill or like she could not deal with the public. Tr. at 32. She stated she resumed full time work as a customer service representative at the treasurer's office on February 8, 2011. Tr. at 29.

---

[2] Plaintiff indicated in a work activity report that she worked 40 hours per week and earned $12 an hour as a medical clerk from June 20, 2011, to August 4, 2011. Tr. at 296. She also indicated she received $223 per week in unemployment compensation. *Id.*

Plaintiff testified she visited a physician regularly, attended counseling, and took Effexor and Seroquel during the time she was working as a hospital administrator and between February 2011 and February 2012. Tr. at 30–31, 38–39. She stated she visited the emergency room at MUSC for an anxiety attack. Tr. at 31. She denied being hospitalized between February 2011 and February 2012, but indicated she was hospitalized for a nervous breakdown in 2003. Tr. at 30.

Plaintiff testified she was able to drive between February 2011 and February 2012, but that her husband typically drove. Tr. at 31. She stated she lived with her husband and three children, who were 12, 13, and 16 years old. Tr. at 31–32. She indicated she did some laundry and her children did the rest. Tr. at 32. She stated her husband cooked all of the meals. *Id.* She indicated she was able to dress herself and maintain personal hygiene. Tr. at 33. She stated she cleaned her house and was a "[b]it OCD." *Id.* She indicated she occasionally shopped with her husband, but that he typically did most of the grocery shopping. *Id.* Plaintiff denied participating in any social activities or attending church between February 2011 and February 2012. Tr. at 33–34. She indicated she was involved with some of her children's school activities during the period, but her husband participated more often than she did. Tr. at 34. She stated she read suspense novels and watched movies for entertainment. *Id.* She denied visiting friends from February 2011 to February 2012 and stated she did not socialize often. Tr. at 34–35. Plaintiff testified her medication affected her concentration and caused fatigue. Tr. at 39.

Plaintiff confirmed the accuracy of statements in her medical records that suggested she drank two bottles of wine daily. Tr. at 41. She stated that she began

drinking two bottles of wine daily two years earlier. *Id.* She indicated she continued to drink one bottle of red wine daily, but then stated one to two glasses daily. Tr. at 41–42. She indicated the wine did not affect her ability to work. Tr. at 42.

Although the record reflects that Vocational Expert ("VE"), J. Adger Brown, Jr., was present during the hearing, the ALJ did not obtain his testimony. Tr. at 24, 45.

### 2.    The ALJ's Findings

In his decision dated August 14, 2012, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
2.    The claimant has not engaged in substantial gainful activity since February 10, 2011, the alleged onset date (20 CFR. 404.1571 *et seq.* and 416.971 *et seq.*).
3.    The claimant has the following medically determinable impairments: gastric bariatric surgery, eye pain, ganglion cyst, obesity, bipolar disorder and post-traumatic stress disorder (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).
4.    The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR. 404.1521 *et seq.* and 416.921 *et seq.*).
5.    The claimant has not been under a disability, as defined in the Social Security Act, from February 10, 2011, through the date of this decision (20 CFR 404.1520(c) and 416.920(c)).

Tr. at 12–16.

## II.    Discussion

Plaintiff alleges the Commissioner's step two findings are not supported by substantial evidence. The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. §§ 404.1525, 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. §§ 404.1526, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146

impairment prevents claimant from performing PRW;[4] and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. §§ 404.1520, 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, §§ 404.1520(a), (b), 416.920(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v.*

---

(1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[4] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

*Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is

substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.     Analysis

Plaintiff argues that the ALJ's findings at step two of the sequential evaluation process are not supported by substantial evidence. [ECF No. 17 at 1]. She contends the ALJ determined she had no severe impairments without acknowledging the relevant medical evidence. *Id.* at 7–8. She also maintains the ALJ failed to explain how the evidence supported his conclusions that Plaintiff had mild restriction of activities of daily living, mild limitations in social functioning, and mild limitations in concentration, persistence, or pace. *Id.* at 9.

The Commissioner argues that the ALJ properly concluded Plaintiff did not have a severe impairment. [ECF No. 19 at 6–13]. She maintains Plaintiff did not demonstrate that she had at least one medically-determinable impairment that satisfied the one-year durational requirement under the Social Security Act and significantly limited her ability to perform basic work activities. *Id.* at 7. The Commissioner notes that no physician indicated Plaintiff was unable to work during the period. *Id.* She points out that Plaintiff worked, looked for work, and collected unemployment benefits during the one-year period she argues she was disabled. *Id.* at 8–9. The Commissioner also argues the medical records support the ALJ's determination. *Id.* at 9–13. She maintains the ALJ's failure to specifically address Plaintiff's treatment notes from Charleston Mental Health

amounted to harmless error because the objective evidence in the record does not support the presence of a severe mental impairment. *Id.* at 13.

The Social Security Regulations require use of a special technique to evaluate the severity of mental impairments. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The ALJ must first evaluate the claimant's relevant symptoms, signs, and laboratory findings to determine whether she has a medically-determinable impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If the ALJ determines the claimant has a medically-determinable impairment, he must indicate the symptoms, signs, and laboratory findings that confirm the presence of the impairment. *Id.* The ALJ's decision must "show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment." 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4). He must "rate the degree of functional limitation resulting from the impairment(s)," based on consideration of clinical signs and laboratory findings, the effects of the claimant's symptoms, and factors affecting the claimant's mental functioning, and must assess the extent to which the claimant's impairment interferes with her abilities to function independently, appropriately, effectively, and on a sustained basis in the functional areas of activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(b)(2), (c)(1), (2), (3), 416.920a(b)(2), (c)(1), (2), (3). The ALJ's decision "must include a specific finding as to the degree of limitation in each of the functional areas," rated as none, mild, moderate, marked, or extreme. 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4); *see also* 20 C.F.R. §§ 404.1520a(c)(4),

416.920a(c)(4). If the ALJ rates the claimant's degree of limitation in the first three functional areas as "none" or "mild" and in the fourth as "none," the ALJ generally finds the claimant's mental impairment to be nonsevere, unless the evidence otherwise indicates the claimant has "more than minimal limitation" on her "ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

The ALJ determined bipolar disorder and post-traumatic stress disorder to be medically-determinable impairments. *See* Tr. at 12. He accorded great weight to Dr. Hadley's opinion that concluded the evidence did not support the presence of a severe mental impairment. *See* Tr. at 14. He decided Plaintiff had no limitation of activities of daily living because she reported she cared for her family, rode in a car, shopped for food, dusted, did laundry, bathed, and dressed herself. Tr. at 15. He concluded Plaintiff had mild limitation in social functioning because she reported she liked to keep to herself and testified she lived with her husband and three children and watched television. *Id.* The ALJ determined Plaintiff had mild limitation in concentration, persistence, or pace because she reported she read suspense novels and was able to watch movies, but had difficulties with memory, concentration, and understanding, following instructions, and getting along with others. *Id.* He noted Plaintiff had no episodes of decompensation of extended duration. *Id.* He conclude Plaintiff's medically-determinable mental impairments were non-severe because they caused "no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation." *Id.*

In reaching his conclusion that bipolar disorder and post-traumatic stress disorder were nonsevere impairments, the ALJ neglected to discuss the history of Plaintiff's

mental impairment. *See* Tr. at 13–15. Although the ALJ discussed some of the treatment history with respect to Plaintiff's physical impairments, his decision is devoid of citation to or discussion of Plaintiff's mental health complaints and examination findings. He ignored evidence in Dr. Freedy's records regarding Plaintiff's history of job losses due to her depression and anxiety. *See* Tr. at 366, 383. He did not discuss Plaintiff's subjective complaints or Dr. Freedy's observations that were consistent with exacerbated psychological symptoms. *See* Tr. at 366–67, 368–69, 381, 383–84. He failed to recognize objective test results confirming depression and anxiety. *See* Tr. at 356. He also neglected treatment notes from Dr. Carr, Dr. Ray, and Summerville Family Practice that described significant psychological symptoms. *See* Tr. at 543, 555, 579–83. Because the ALJ did not adequately support and explain his conclusions regarding the severity of Plaintiff's mental impairments or discuss evidence contrary to his conclusions, the undersigned recommends the court find that he failed to comply with the requirements of 20 C.F.R. §§ 404.1520a(e)(4) and 416.920a(e)(4).

The Fourth Circuit has generally found an ALJ's error to be harmless where he "conducted the proper analysis in a comprehensive fashion," "cited substantial evidence to support his finding," and would have unquestionably "reached the same result notwithstanding his initial error." *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994). In *Crocker v. Astrue*, C/A No.: 1:11-1629-CMC-SVH, 2012 WL 5985657 at *10 (D.S.C. Nov. 14, 2012, *adopted*, 2012 WL 5985919 (D.S.C. Nov. 28, 2012), this court considered an ALJ's failure to follow the special technique set forth in 20 C.F.R. § 404.1520a. The court noted that the issue appeared to be one of first impression in the Fourth Circuit and

that other circuits were split on whether a failure to comply with the provisions of 20 C.F.R. § 404.1520a mandated remand or amounted to harmless error. 2012 WL 5985657 at *10. Although the Commissioner did not raise a harmless error defense in *Crocker*, the court concluded that "[e]ven if he had, the ALJ's step two analysis of Plaintiff's mental impairment does not appear to justify extending the harmless error doctrine to this case," based on the ALJ's failure to "specifically consider the four broad functional areas employed by the special technique in determining the degree of Plaintiff's functional limitation." 2012 WL 5985657 at *10–11. This case is distinguishable from *Crocker* in that the ALJ specifically considered the functional areas employed by the special technique, but the circumstances of this case similarly do not support extending the harmless error doctrine because the ALJ did not conduct the proper analysis in a comprehensive fashion or cite substantial evidence to support his findings. *See Mickles*, 29 F.3d at 921. The undersigned recommends that the court find the ALJ erred in his assessment of the severity of Plaintiff's mental impairments at step two and further recommends the court reject the Commissioner's argument that the ALJ's error was harmless.

Finally, the undersigned recommends the court reject the Commissioner's argument that the ALJ's decision should be affirmed because it finds support in the evidence of record. *See* ECF No. 9 at 13. The Commissioner cites significant and compelling evidence to support the ALJ's conclusion, but this court is constrained to rely only on the ALJ's explanation in the administrative record. *See Securities and Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("The Commission's action cannot

be upheld merely because findings might have been made and considerations disclosed which would justify its order"); *Cunningham v. Harris*, 658 F.2d 239, 244 n.3 (4th Cir. 1981) ("We cannot affirm the decision of the Secretary on grounds not invoked by the agency"). Had the ALJ considered Plaintiff's mental health treatment history, objective findings, and examination notes and supported his conclusion as argued in the Commissioner's brief, the undersigned would be inclined to recommend a finding that his decision was supported by substantial evidence. However, in the absence of a well-supported explanation from the ALJ, the undersigned must recommend a finding that substantial evidence did not support the ALJ's conclusion that Plaintiff's mental impairments were nonsevere.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

IT IS SO RECOMMENDED.

Shiva V. Hodges

March 17, 2015                                Shiva V. Hodges
Columbia, South Carolina                      United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).